**COMMUTER TRANSPORTATION SYSTEMS, INC., Plaintiff-Appellee,**

v.

**HILLSBOROUGH COUNTY AVIATION AUTHORITY, Defendant-Appellant.**

No. 86–3226.

United States Court of Appeals, Eleventh Circuit.

Oct. 15, 1986.

---

Lynn H. Cole, Allen, Dell, Frank & Trinkle, Tampa, Fla., Jeffrey H. Howard, Davis, Graham & Stubbs, Washington, D.C., for defendant-appellant.

Joel R. Tew, Perry Y. Newson, Clearwater, Fla., for plaintiff-appellee.

Before RONEY, Chief Judge, KRAVITCH, Circuit Judge, and ATKINS *, Senior District Judge.

ATKINS, Senior District Judge:

Hillsborough County Aviation Authority (The Authority) appeals from a denial of its motion for a summary judgment on the grounds that it is immune from antitrust attack under the state action doctrine of *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943) and immune from damage claims under the Local Government Antitrust Act of 1984 (15 U.S.C. § 34–36).

The Authority also urges that the denial of the summary judgment is immediately appealable as a "collateral order" under *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) and *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

We find that The Authority is immune from antitrust scrutiny. Having so held, we do not reach the claimed immunity from damage claims. The appellee has failed to produce any facts or evidence to show that any unauthorized conspiracy existed which would remove The Authority's actions from state action immunity. We also hold that The Authority has satisfied the *Cohen* test and is immune from liability and trial under *Mitchell;* therefore, the summary judgment is immediately appealable as a collateral order. We reverse and remand to the

---

\* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

district court for entry of judgment for Hillsborough County Aviation Authority.

### Background

The Authority was created by the Florida legislature to develop and administer public airports in the Tampa, Florida region. The Authority is a government arm of the State; it has the power of eminent domain and the authority to limit and prohibit competition which is destructive of the promotion of commerce and tourism.

In 1985, the subject airport served over 8 million passengers and ranked third largest in Florida and twenty fifth largest in the United States. The airport has limited space available for passengers to board ground transportation vehicles. Traffic congestion at curbside can be a serious problem. During peak hours, crowding reaches critical proportions. Absent a contractual commitment to service odd hour flights, ground transportation may be totally unavailable to passengers traveling to remote areas. For these reasons, The Authority has regulated the number of limousine operators with whom it will contract for the pickup of unreserved passengers. However, all limousine operators, including the appellee, are permitted to pick up and drop off pre-reserved passengers.

Prior to July 1, 1980, state law prohibited the operation of limousine and other ground transportation services without a certificate of public convenience and necessity from the State Public Service Commission. Following the expiration of the Public Service Commission's jurisdiction, The Authority decided to maintain the status quo in limousine service until it could be determined what governmental agency would assert regulatory jurisdiction over airport limousines and, if not, what ground transportation policy The Authority should adopt. At that time, there were outstanding contracts between The Authority and six limousine operators. Shortly thereafter, Commuter Transportation Systems, Inc. (Commuter) sought a contract from The Authority for the pickup of unreserved passengers at the airport for transport to Pinellas County. Commuter was allowed without a contract to pick up pre-reserved passengers at the airport.

Meanwhile, The Authority hired an outside consultant, Peat, Marwick & Mitchell (Peat, Marwick) which recommended that The Authority request competitive bids for the exclusion rights to provide airport limousine service. Peat, Warwick also recommended that The Authority should continue the status quo in limousine contracting until construction of the new garage space, begun in May 1981, was completed. The construction temporarily reduced the available parking and curbside space.

Following the decision to maintain the status quo, Commuter brought this action in February, 1981, alleging that The Authority conspired with its competitors to exclude it from the pickup of unreserved passengers and in refusing to grant it a contract in violation of Sections 1 and 2 of the Sherman Act and the corresponding state antitrust law.

After completion of the new garage space and on the recommendation of Peak, Warwick, The Authority in November, 1983, resolved to seek competitive bids to provide unreserved limousine service at the airport and require all pre-reserved limousine operators to obtain a permit. Notice was given to Commuter and all other limousine operators. The Authority met in December, 1983 to explain its policy and to invite all operators to submit bids. Notice of invitation to bid was published on January 10 and January 17, 1984. Commuter did not respond to any notices nor did it submit a bid.

After four years and nine months of discovery, including extensive interrogatories, production of thousands of pages of The Authority's records, and seventeen depositions, The Authority moved, in November, 1985 for a summary judgment. No counter-affidavits, sworn testimony, or document were filed with Commuter's opposing brief contravening The Authority's support for its motion.

The trial judge stated "The factual disputes in this case preclude summary judgment." The district court subsequently denied a motion for certification under 28 U.S.C. § 1292, Motions to Reconsider, and The Authority's Renewed Motion for a Summary Judgment.

On April 21, 1986, the court denied The Authority's Petition for a Writ of Mandamus, stayed proceedings below, and scheduled this case for expedited appeal.

### The Order Denying Summary Judgment is a Collateral Order

The first issue the court must decide is whether the district court's denial of The Authority's Motion for Summary Judgment is immediately appealable as a collateral order.

■ District court orders constitute "final decisions," appealable under 28 U.S.C. § 1291 as "collateral order" if they (a) are "effectively unreviewable" on appeal after trial; (b) conclusively determine the disputed question; and (c) resolve an important issue completely separate from the merits of the action. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978); *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed.2d 1528 (1949). *See also, Harris v. DeVeaux*, 780 F.2d 911 (11th Cir.1986).

In *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), the Supreme Court found that denial of a summary judgment on grounds of qualified immunity is immediately appealable. The immunity claimed in *Mitchell* is comparable to the immunity claimed here for purposes of applying the *Cohen* doctrine.

In *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the court found that denial of qualified immunity is immediately appealable because of social costs.

Absent state immunity local officials will avoid decisions involving antitrust laws which would expose such officials to costly litigation and conclusory allegations. *See*

P. Areeda, *Antitrust Law* ¶ 212.3b at p. 57 (1982 Supp.). The purpose of the state action doctrine is to avoid needless waste of public time and money.

The Authority claims immunity under *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), which holds that immunity protects it from antitrust claims on the principles of federalism. Under the teaching of *Parker*, official conduct is immune from federal antitrust scrutiny if the state legislature "contemplated the kind of action complained of." The Authority was authorized by the state to negotiate contracts with businesses as it may deem necessary for the development and expansion of the airport and to grant concessions, upon such terms and conditions as it shall deem proper. It is clear that The Authority's actions pertaining to limousine service was contemplated by the state legislature and under *Parker*, The Authority is immunized.

■ *Harlow* and *Parker* each provide *"immunity from suit"* rather than a mere defense to liability." 105 S.Ct. at 2816 (emphasis in original). Thus, the district court's decision (denying immunity) is effectively unreviewable on appeal from a final judgment.

The order denying summary judgment based on immunity conclusively determines the disputed question. The reasoning of the court in *Mitchell* is dispositive. There the court held the issues of immunity are conclusive so far as the summary judgment is concerned. 105 S.Ct. at 2816. The court also determined that such a decision is "conclusive" even if it is based on the existence of potential fact issues. The court's denial of a summary judgment finally and conclusively determines the defendant's claim of right not to stand trial on the plaintiff's allegations, and because "[t]here are simply no further steps that can be taken in the district court to avoid the trial the defendant maintains is barred." *Mitchell*, 105 S.Ct. at 2816. The court found *Cohen's* "consummated decision" requirement satisfied in such a case.

In the case at bar The Authority's right not to stand trial because of state action and statutory immunity has been conclusively determined by the order from which this appeal is taken. Thus, the second requirement of *Cohen* has been satisfied in this case as well.

The order denying summary judgment based on immunity resolves an important issue separate from the merits. The *Mitchell* court held the "claim of immunity is conceptually distinct from the merits of the plaintiff's claim." The Supreme Court in *Mitchell*, "recognized that a question of immunity is separate from the merits of the underlying action for purposes of the *Cohen* test." 105 S.Ct. at 2817. Here immunity applies with the same force. This issue is separate from the merits of the litigation and therefore satisfies the third requirement of *Cohen.*

We hold that the denial of a summary judgment based on The Authority's immunity from liability and trial constitute an appealable "collateral order" under *Cohen.*

*Immunity Under State Action Doctrine*

■ Commuter challenges The Authority's decision to preserve the status quo in its limousine contracting from July 1, 1980 through December, 1983 pending development of an airport ground transportation policy and completion of the parking garage construction. The Authority argues it is immune from antitrust attack under the state action doctrine of *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). There the Supreme Court found a state program derived its authority and its efficacy from the legislative command of the state and thus did not conflict with the federal antitrust laws. The Authority was created as a public instrumentality of the Florida legislature to develop and administer public airports in the Tampa, Florida region. The status of The Authority is clearly analogous with *Parker* in this respect.

The Supreme Court in *Town of Hallie v. City of Eau Claire,* 471 U.S. 34, 105 S.Ct. 1713, 1717, 85 L.Ed.2d 24 (1985) held that a local government is immune from antitrust attack if "it is engaging in the challenged activity pursuant to a clearly expressed state policy." The Authority was given power to grant concessions, upon such terms and conditions as it shall deem proper. This expressed provision would certainly encompass the granting or exclusion of limousine operators to and from the airport. In a similar case, involving another limousine operator who alleged the same kind of violation, Judge Kovachevich held "the [A]uthority is engaging in the challenged activity pursuant to a 'clearly articulated' state policy, and the intent of the legislation is that the delegated actions of the [A]uthority will have anti-competitive effects." *Astro Limousine Service, Inc. v. Hillsborough County Aviation Authority,* 647 F.Supp. 193, 195 (M.D.Fla.1985). Judge Kovachevich also found there were "material questions of fact as to whether or not active state supervision should be required of such public governmental bodies." *Id.* at 4.

■ We disagree. Active state supervision is not a prerequisite to state action immunity for The Authority whether or not it is characterized as a "municipality." *Town of Hallie v. City of Eau Claire,* 471 U.S. 34, 105 S.Ct. 1713, 85 L.Ed.2d 24; Areeda, "Antitrust Immunity for 'State Action' After Lafayette," 95 *Harv.L.Rev.* 435, 445 (1981) (The Supreme Court "does not require that government acts be 'compelled' or supervised by the state"). For purposes of antitrust analysis, The Authority is analogous to a municipality. *Deak-Perera Hawaii, Inc. v. Dept. of Transp.,* 745 F.2d 1281 (9th Cir.1984), *cert. denied,* 470 U.S. 1053, 105 S.Ct. 1756, 84 L.Ed.2d 82 (1985) (active state supervision not required by state agency). The Authority is subject to state "sunshine" laws, has police power jurisdiction, power of eminent domain, zoning authority, bonding authority, rulemaking power and is exempt from taxation. There is, nevertheless, sufficient state supervision here. The governor appoints,

and may remove for cause, all the regular members of The Authority.

### No Illicit Conspiracy

 State policy here clearly intended that The Authority may displace unrestrained business competition at the airport with regulation of monopoly public service. Commuter must show a conspiracy not authorized by state law and thus beyond protection of state action immunity. In *Greyhound Rent-A-Car, Inc. v. City of Pensacola*, 676 F.2d 1380 (11th Cir.1982), *cert. denied*, 459 U.S. 1171, 103 S.Ct. 816, 74 L.Ed.2d 1014 (1983), the court found the plaintiff must prove an illicit conspiracy to exclude the entity from state action immunity.

In *Fisher v. City of Berkeley*, —— U.S. ——, 106 S.Ct. 1045, 89 L.Ed.2d 206 (1986), the Supreme Court observed it is "of considerable importance" that independent activity by a single entity be distinguished from a concerted effort by more than one entity to fix prices or otherwise restrain trade.

### The Authority Acted Unilaterally

 The depositions, answers to interrogatories, and affidavits of The Authority's members and staff all confirm that the challenged action of The Authority in declining to contract with Commuter from July, 1980 through 1984 was taken unilaterally to achieve a legitimate public policy objective of The Authority and not pursuant to any concerted action with other limousine operators.

The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, —— U.S. ——, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A plaintiff seeking damages for a violation of § 1 must present evidence that tends to exclude the possibility that the alleged conspirators were acting independently. *Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752, 764, 104 S.Ct. 1464, 1470, 79 L.Ed.2d 775 (1984).

Commuter has not brought forth any evidence to prove the conspirators did not act independently. Moreover, Commuter has failed to demonstrate the existence of any genuine issue of fact that would warrant trial on the state action immunity defense. Accordingly, we find the district court erred in denying a summary judgment.

We do not reach the issue of whether the district court abused its discretion in failing to apply the Local Government Antitrust Act of 1984 because the state action immunity defense makes such a determination unnecessary.

REVERSED and REMANDED for entry of judgment in behalf of appellant.