GTE DATA SERVICES, INC., Plaintiff,

v.

ELECTRONIC DATA SYSTEMS CORPORATION, Defendant.

No. 87–384–CIV–T–17(C).

United States District Court,
M.D. Florida,
Tampa Division.

Aug. 3, 1989.

Richard Benjamin Wilkes, Trenam, Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, Tampa, Fla., for plaintiff.

Michael S. Hooker, Glenn, Rasmussen, Fogarty, Merryday & Russo, Tampa, Fla., Phillip N. Smith, Jr., Robb L. Voyles, Baker & Botts, Dallas, Tex., for defendant.

## ORDER ON MOTION TO DISMISS

KOVACHEVICH, District Judge.

This cause is before the Court on Defendant's motion to dismiss, filed March 27, 1989, and response thereto, filed May 8, 1989.

A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that Plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). A trial court, in ruling on a motion to dismiss, is required to view the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1947).

Complaint (Exhibit A) was filed in this cause on March 13, 1987, seeking damages and injunctive relief and containing the following causes of action: 1) violation of Section 2 of the Sherman Act and 2) violation of Section 1 of the Sherman Act. Plaintiff maintains that Defendant's attempted enforcement of non-competition covenants as to former employees violate antitrust laws. The cause of action was administratively closed on August 7, 1987, based on pending settlement negotiations. After the negotiations proved to be unsuccessful, the case was reopened on March 8, 1989.

On March 27, 1989, Defendant filed a motion to dismiss the complaint for failure to state a cause of action. Preliminarily, Defendant argues that the complaint is subject to a heightened pleading standard because it is not an ordinary complaint, since Plaintiff seeks "treble damages for conduct which cannot constitute federal antitrust violation."

■ The Eleventh Circuit Court of Appeals in *St. Joseph's Hospital, Inc. v. Hospital Corporation of America,* 795 F.2d 948 (11th Cir.1986), addressed a motion to dismiss in a case involving Sherman Act violations. The Court found:

> Although authorized by the Federal Rules of Civil Procedure, the liberal rules as to sufficiency of a complaint make it a rare case in which motion on this ground [failure to state a cause of action] should be granted. "[I]n appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." (cite omitted). In spite of the defendant's protestations to the contrary the liberal standard of Rule 8 is also generally accepted as the standard in an antitrust action. The short statement must be plain and must show the pleader is entitled to relief. The pleading "must contain either direct allegations on every material point necessary to sustain a recovery on any legal theory, even though it may not be the theory suggested or intended by the pleader, or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." (cite omitted).

There is no heightened scrutiny required merely because this is an antitrust violation.

## JURISDICTION

At Section D, page 15, of the motion, Defendant asserts that the complaint fails to allege facts sufficient to invoke jurisdiction under the Sherman Act. Defendant asserts that in order to invoke jurisdiction, the complaint must allege activity which occurs in the flow of interstate commerce. *Chatham Condominium Associations v. Century Village, Inc.,* 597 F.2d 1002 (5th Cir.1979).

The Supreme Court in *McLain v. Real Estate Board of New Orleans,* 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980), stated that jurisdiction of the Sherman Act may be satisfied by either the theory of "in commerce" or the "effect on commerce." There is no requirement that the alleged unlawful activity itself had an impact on interstate commerce. In the Eleventh Circuit, pleading Sherman Act jurisdiction requires "allegations that defendant's business activities have a substantial impact on interstate commerce." *Shahawy v. Harrison,* 778 F.2d 636 (11th Cir.1985).

■ The complaint alleges that Defendant is one of five national competitors in the business of providing computerized data management services for Medicaid programs; that there are approximately 35 states involved in letting contracts for provision of these services; and that Defendant provides the services to more states than any other provider. These allegations sufficiently allege that Defendant's business activities impact on interstate commerce.

## SHERMAN ACT SECTION 2–EXEMPTION

Defendant's next argument is that the anti-competitive conduct alleged in the complaint, as to the Section 2 claim, is exempt from the antitrust laws. Defendant argues that the conduct alleged in the complaint is protected by the "Noerr–Pennington" doctrine and does not come within the "sham" exception to that rule. In order to determine whether a particular situation falls within an exception to a general rule, one must determine first that the general rule itself is applicable. *St. Joseph's Hospital,* 795 F.2d at 955.

The "Noerr–Pennington" doctrine has been established by a series of United States Supreme Court decisions. The first was *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961). There railroads joined together and conducted a publicity campaign to persuade the Pennsylvania legislature to enact laws which were detrimental to the trucking industry. Finding no violation of the Sherman Act, the court held that the antitrust

liability could not be based on "mere solicitation of governmental action with respect to the passage and enforcement of laws." *Id.*, at 138, 81 S.Ct. at 530.

The court further recognized that this right to petition the government existed even if the petitioning party only had an anti-competitive motive; an exception occurs where the actions could be considered "a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor."

*United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965) reaffirmed the Noerr ruling. In UMW a coalition of large coal companies and the union persuaded the Secretary of Labor to adopt high minimum wage rates for companies supplying coal to the Tennessee Valley Authority. The court found that such joint efforts to "influence public officials" did not violate the antitrust laws even if they were intended to eliminate competition.

The immunity first promulgated in Noerr was extended to administrative and judicial proceedings in *California Transport v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). In that case, the court, for the first time, utilized the exception to the general rule. The court found there to be many "forms of illegal and reprehensible practice[s] which may corrupt the administrative or judicial processes and which may result in antitrust violations." It is, the court said, a factfinders task to determine whether or not the administrative or judicial process has been abused, thereby denying the abuser the immunity refuge of the "Noerr–Pennington" doctrine. *Id.*, at 513, 92 S.Ct. at 613.

The complaint alleges the following specific action on Defendant's part in implementing its anti-competitive policy:

1. Requiring all employees (currently about 40,000) to execute employment agreements containing overbroad and unreasonable covenants not to compete for three (3) years, within 200 miles of any location where EDS or any parent (The General Motors Corporation), subsidiary or affiliated company does business.

2. Enforcing an atmosphere of intimidation among EDS employees who leave EDS by threatening to file lawsuits and seek injunctive relief against them under provisions of the non-compete agreement which EDS knows to be overbroad and legally unenforceable.

3. Refusing to pay sales commissions and bonuses due and owing an employee when that employee leaves EDS.

4. Contractually requiring the forfeiture of incentive stock, restricted stock, bonus stock, and option stock provided to participants in the EDS Stock Incentive Plan, pursuant to specified terms and conditions.

5. Filing lawsuits in bad faith against employees who leave EDS and go to work for companies that compete with it.

The only of these allegations which might be subject to the exemption of the "Noerr–Pennington" doctrine are numbers 2 and 5 above, the threat to file and the filing of lawsuits. Clearly resort to legal process falls within the general rule of immunity under the doctrine. Therefore, the Court must next ask the question whether or not the situation in this case represents an exception to that general rule.

The "sham" exception from immunity in a litigation forum is based on the motive of the litigant whose intent is:

... to harm one's competitors not by the *result* of the litigation but by the simple fact of the *institution* of litigation. Without a proper allegation of such a motive and well-pleaded facts which could lead this court to infer such a motive, a claim under the sham exception is fatally defective.

*City of Gainesville v. Florida Power & Light Co.,* 488 F.Supp. 1258, 1266 (S.D.Fla. 1980).

The complaint alleges the following in regard to the issue of the threat to sue and the filing of lawsuits by Defendant:

1. Because the business [Medicaid] is relatively new and only five (5) national

competitors are currently in the Medicaid business, there are relatively few individuals experienced in providing computerized data management services in connection with the administration of Medicaid programs. Experience in providing computerized data management services in connection with the administration of Medicaid programs does not require any proprietary knowledge of the employer or knowledge of employer's trade secrets. (paragraph 10).

2. A bid requirement for contracts in the Medicaid business is that the bidder submits resumes and other proofs of qualifications of personnel employed by the bidder, who will be handling specified positions of responsibility under the prospective contract, and specifying their experience in the provision of computerized data management services in connection with the administration of Medicaid programs. It is essential to have people with this experience in order to perform properly the contract work. (paragraph 11).

3. Defendant maintains its dominance in the market and excludes competitors from entering the market, in part, by a policy which imposes unreasonable contractual restraints on the mobility of its employees. EDS implements this policy by: 1) threatening to file lawsuits and seek injunctive relief against them under provisions of the non-compete agreement which it knows to be overbroad and legally unenforceable and 2) filing lawsuits in bad faith against former employees who go to work for competing companies. (paragraph 13).

4. Defendant has threatened and filed numerous legal actions in various parts of the nation, seeking enforcement of the restrictive employment covenants; Defendant has utilized such legal action to deter and restrain competition in the market and to hinder the activities of its competitors and its employees, including Plaintiff. (paragraph 14).

5. The non-compete covenants which Defendant requires that its employees execute are unreasonable in area and

duration and apply to employees who were not in a position to obtain valuable personal contacts or trade secrets which might be lost to Defendant if the employee were to compete. (paragraph 17).

The Eleventh Circuit made it clear in the *St. Joseph* case that the complaint must be plain and still contain either direct allegations on every material point or contain allegation from which an inference may be drawn that evidence on the material points will be introduced at trial.

The Court finds that the complaint in this cause satisfies the pleading standard established therein. The complaint alleges that: 1) there are a limited number of qualified persons to do the job involved; 2) that Defendant has employed a majority of said qualified employees; 3) that Defendant has required its employees to sign legally unenforceable non-compete agreements; and 4) that Defendant has in bad faith, knowing that the covenants were unenforceable, sued or threatened to sue its former employees to restrain competition. The Court agrees with Plaintiff that these factual allegations sufficiently put Defendant on notice that Plaintiff claims that Defendant intended to harm Plaintiff not by the "result of the litigation" but by the fact of the institution of such litigation.

## SHERMAN ACT SECTION 1

Defendant next asserts that the complaint fails to state a claim under Section 1 of the Sherman Act. The elements of an action under Section 1 are: 1) joint action, in the form of a contract, combination *or* conspiracy, by two or more distinct and independent entities or persons; 2) resultant, unreasonable restraint of interstate trade or commerce; and 3) actual damage caused by the unreasonable anti-competitive restraint of trade. *Middlebrooks v. City of Eustis*, 563 F.Supp. 1060 (M.D.Fla. 1983).

Non-competition contracts may, even if legal under state law, be used in an unlawful restraint of trade under Section 1 of the Sherman Act. *United States v. Empire Gas Corp.*, 537 F.2d 296 (8th Cir.1976). In general, employment agreements not to compete are proper subjects for scrutiny under Section 1. *Wegmann v. London*,

648 F.2d 1072 (5th Cir.1981). *Newburger, Loeb & Co. v. Gross,* 563 F.2d 1057 (2d Cir.1977), *cert. denied,* 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978).

The second element necessary for a restraint of trade claim is the reasonableness of the restraint. Covenants not to compete are not considered to be *per se* violations of the antitrust laws. *Empire Gas,* 537 F.2d 296. A court in evaluating an agreement not to compete must query whether the agreement, at the time it was made, promoted enterprise and productivity. If it did, the court applies the rule of reason. *Polk Bros., Inc. v. Forest City Enterprises, Inc.,* 776 F.2d 185, 189 (7th Cir.1985). Defendant alleges that Plaintiff has failed to allege facts showing that the covenants are an unreasonable restraint on trade.

■ A covenant not to compete may be considered an unreasonable restraint of trade if the restraint is greater than necessary to protect a legitimate interest or if the promisee's need is outweighed by the hardship to the promisor and the likely injury to the public. In application of the rule of reason, precedent has less than its usual value, the question of reasonableness is to be determined on an *ad hoc* basis. There is no "inflexible" formula. *Consultants & Designers v. Butler Service Group,* 720 F.2d 1553, 1557 (11th Cir.1983).

The rule of reason requires Plaintiff establish that the covenant had an adverse impact on competition. That question centers on whether the acquisition of the power to exclude competitors has a sufficiently adverse impact on competitors to constitute a violation of Section 1, not whether the present effect of exclusion adversely impacts on competition. *Id.,* at 1562.

The question to be addressed in determining whether a covenant of non-competition is an unreasonable restraint of trade are factual issues which are generally for a fact-finder. If the complaint directly or by inference alleges the elements of the claim, it will survive the motion to dismiss. The Court agrees with Plaintiff's response to the motion that the complaint sufficiently alleges the unreasonableness of the non-compete clauses.

Defendant next asserts that the complaint fails to sufficiently allege that the non-compete agreements had market impact. Defendant asserts that the minimal elements to be plead are: 1) size of the relevant product and geographic markets; 2) the amount of competition foreclosed; and 3) how the acts of defendant affected competition.

The complaint sufficiently plead the size of the "product" and the geographic markets at paragraphs 10 and 12. The complaint sufficiently alleges how the acts of defendant affected competition; see particularly paragraphs 10, 11, 13, 14, and 17.

■ The last question in analyzing this issue is whether or not the complaint sufficiently alleges the amount of competition foreclosed by defendant. The Court agrees that the complaint is insufficient in regard to this one element. The only statements in the complaint relevant to this element is that Defendant is the dominant competitor, provides service to more states than any other, and receives substantially greater revenues than any other competitor. This is insufficient to meet the pleading requirements of Rule 8. The motion to dismiss should be granted, as to this issue, and Plaintiff should be given the opportunity to amend its complaint.

## SHERMAN ACT SECTION 2

Defendant contends that the complaint fails to allege facts necessary to state a claim under Section 2 of the Sherman Act. The elements for a claim under that section are: 1) specific intent to monopolize; 2) predatory or anticompetitive conduct in an effort to further the specific intent; and 3) the dangerous probability of success in the relevant market. *Middlebrooks,* 563 F.Supp. at 1061.

Defendant alleges that Plaintiff failed to sufficiently allege a specific intent to monopolize and/or a dangerous probability of success in the relevant market. As to the specific intent to monopolize, the Court finds the element may be fairly inferred from the pleading of the complaint.

However, the Court agrees with the contention that the complaint fails to allege with sufficiency specificity that there is a dangerous probability of success. This issue like the one related to Defendant's argument as to the claim of Section 1 violation, as to relevant market share, fails in the Court assessment to meet the pleading requirements to state a cause of action.

## COMPENSABLE INJURY

The final argument of the motion to dismiss is that the complaint fails to allege a compensable injury. To plead an action under the Sherman Act, Plaintiff must allege injury to its business from activity that restrains competition in a market. 15 U.S.C. Section 15; *Brunswick Court v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977). The injury alleged must be to a market or competition, not to an individual. *McGlinchy v. Shell Chemical Co.*, 1985–2 Trade Cas. (CCH) 66,673 (N.D.Ca.1985). The injury alleged cannot be speculative. *Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.*, 1987–2 Trade Cas. (CCH) 67,664, 1987 WL 18245 (N.D.Ill.1987).

The Court agrees with Defendant that the complaint fails to meet the pleading standard on the issue of injury to the market, and competition, and, to Plaintiff specifically. The injury claimed by Plaintiff is no more than speculative. Plaintiff has not identified one employee important to its functioning or to the market which was lost due to the alleged anti-competitive activity of Defendant. It has not identified one contract lost in the market or by it directly caused by any of the activities it claims Defendant engaged in to prevent competition. Accordingly, it is

ORDERED that the motion to dismiss be granted in accordance with the preceding opinion and Plaintiff have ten (10) days from the date of this order in which to file an amended complaint. FAILURE TO TIMELY FILE AN AMENDED COMPLAINT WILL RESULT IN DISMISSAL OF THIS ACTION WITHOUT FURTHER NOTICE.

DONE and ORDERED.