**GOLTA, INC., a Florida Corporation, Plaintiff,**

v.

**GREATER ORLANDO AVIATION AUTHORITY and Mears Transportation Group, Inc., a Florida Corporation, Defendants.**

No. 90–0042–CIV–ORL–18.

United States District Court,
M.D. Florida,
Orlando Division.

April 2, 1991.

Clarine F. Smissman, Newman & Eaton, Orlando, Fla., for plaintiff.

Christopher C. Skambis, Elaine G. Fishman, Foley & Lardner, Orlando, Fla., for Greater Orlando Aviation Authority.

Christopher K. Kay, Michael J. Beaudine, Foley & Lardner, Orlando, Fla., for Mears Transp. Group, Inc.

## ORDER

G. KENDALL SHARP, District Judge.

This lawsuit involves an alleged conspiracy between defendants to restrain trade, create a monopoly, and fix prices in commercial ground transportation to and from the Orlando International Airport. Each defendant has moved for summary judgment and the court held a hearing on the matter. At the hearing, plaintiff filed its memorandum of law in opposition to the motions. Based on a review of the case file, the relevant law, and the arguments at the hearing, the court grants the motions for summary judgment.

### I. Facts

The Greater Orlando Aviation Authority (GOAA) was created by the Florida Legislature. GOAA operates the aviation facilities at the Orlando International Airport (OIA) under an agreement with the City of Orlando. GOAA has seven members, five of whom are appointed by the Governor of Florida, with senate approval. GOAA has broad powers, including the ability to enter contracts to perform its duties. It may adopt reasonable rules and regulations for the safe and orderly operation of OIA and may exercise all the powers that Florida law grants a municipality.

GOAA promulgated certain rules and regulations to govern the commercial ground transportation at OIA. GOAA allows two types of ground transportation at the airport: concessionaires and non-concessionaires. Concessionaires contract with GOAA to provide "on-demand" or unreserved ground transportation services to arriving passengers. GOAA awards ground transportation concessions on the basis of competitive bidding. In contrast, non-concessionaires do not have a contractual relationship with GOAA. Each non-concessionaire must receive a permit from both the City of Orlando and GOAA to provide ground transportation services. Non-concessionaires may not solicit arriving passengers; they may only pick up and drop off passengers that have arranged for transportation ahead of time. Non-concessionaires pay GOAA a set rate for the use of the lower level of OIA to drop off and pick up their passengers.

GOLTA, a non-concessionaire, is an association of independent drivers, who transport passengers in luxury automobiles to and from OIA. Mears Transportation Group is a concessionaire that transports passengers to and from OIA by taxis and shuttle vans. GOLTA has brought a two count complaint against GOAA and Mears. GOLTA alleges that GOAA and Mears conspired to restrain trade, create a monopoly, and fix prices in the ground transportation business in Orlando. According to GOLTA, this conspiracy violates federal and state antitrust laws. GOAA and Mears deny the charges and have moved for summary judgment.

### II. Legal Discussion

#### A. Standard for Summary Judgment

Summary judgment is authorized if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." Fed.R. Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate only in circumstances where "the evidence is such that a reasonable jury could not return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510; *accord Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

The moving party bears the burden of proving that no genuine issue of material fact exists. *See Anderson,* 477 U.S. at 248–50, 106 S.Ct. at 2510–11; *Celotex,* 477 U.S. at 324–25, 106 S.Ct. at 2553–54. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. In determining whether the moving party has satisfied his burden, all inferences drawn from the underlying facts are considered in a light most favorable to the party opposing the motion, and all reasonable doubts are resolved against the moving party. *Id.* at 255, 106 S.Ct. at 2513–14; *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). The moving party may rely solely on the pleadings to satisfy his burden. *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53; Fed.R.Civ.P. 56(c).

As the United States Supreme Court has stated, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511. For a triable issue to surface, enough evidence must appear in favor of the non-moving party to cause a jury to return a verdict for that party. *Id.* at 249–50, 106 S.Ct. at 2510–11. Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial.... The moving party is[, therefore,] 'entitled to a judgment as a matter of law'...." *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552 (quoting *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511).

### B. Federal Antitrust Claims

■ GOAA and Mears have shown that no genuine issue of material fact exists in this lawsuit, and GOLTA has not offered evidence by which it could succeed on its claims at trial. GOLTA alleges that GOAA and Mears entered agreements that violate federal antitrust laws. To succeed on a claim under section 1 of the Sherman Act, 15 U.S.C. § 1 (1988), GOLTA must show that a conspiracy exists between the defendants, that the conspiracy unreasonably restrains trade, and that the unreasonable restraint of trade causes actual damage. *Boczar v. Manatee Hosps. & Health Sys.,* 731 F.Supp. 1042, 1046 (M.D.Fla. 1990); *GTE Data Servs. v. Electronic Data Sys. Corp.,* 717 F.Supp. 1487, 1497 (M.D.Fla.1989). To prevail on a claim under section 2 of the Sherman Act, 15 U.S.C. § 2 (1988), GOLTA needs to show that the defendants agreed to monopolize a relevant market, that they overtly acted to further the alleged agreement, and that they had a dangerous probability of success in the relevant market. *Boczar,* 731 F.Supp. at 1046; *GTE Data Servs.,* 717 F.Supp. at 1492. "A monopoly is 'the power to control prices or exclude competition.'" *Boczar,* 731 F.Supp. at 1046.

■ As became clear at the hearing and after a review of the case file, GOLTA did not establish any of the elements needed to succeed on either a section 1 or a section 2 claim. GOLTA did not offer any evidence that GOAA and Mears conspired or that they engaged in illegal conduct. GOLTA did not offer evidence of an unreasonable restraint on trade, an impact on interstate commerce, or an actual injury caused by the alleged conspiracy. Moreover, GOLTA did not show that GOAA or Mears could, or did, control prices or exclude competition. Because GOLTA has not produced

evidence to support its claims, defendants' motions for summary judgment are granted with respect to GOLTA's section 1 and section 2 claims under the Sherman Act. *See Anderson*, 477 U.S. at 248–50, 106 S.Ct. at 2510–11; *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

In addition, GOAA and Mears have shown the applicability of the state action immunity doctrine to GOLTA's federal antitrust claims. Under the doctrine, the Sherman Act does not prohibit the anticompetitive conduct of a state acting through its legislature. *See Parker v. Brown*, 317 U.S. 341, 350–51, 63 S.Ct. 307, 313, 87 L.Ed. 315 (1943). The Supreme Court has extended the doctrine to protect municipalities that act pursuant to a clearly articulated state policy to displace competition with regulation or monopoly public service. *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 39, 44, 105 S.Ct. 1713, 1716–17, 1719, 85 L.Ed.2d 24 (1985). The Court has also applied the doctrine to protect private parties that act with a municipality. *Southern Motor Carriers Rate Conference, Inc. v. United States*, 471 U.S. 48, 61, 105 S.Ct. 1721, 1729, 85 L.Ed.2d 36 (1985). To extend the doctrine to a private party, the challenged activity must be articulated by state policy and the state must actively supervise the anti-competitive conduct. *Id.* at 57, 62, 105 S.Ct. at 1726–27, 1729. GOAA and Mears bear the burden of proving the elements of state action immunity. *Coin Call, Inc. v. Southern Bell Tel. & Tel. Co.*, 636 F.Supp. 608, 613 (N.D.Ga.1986). They do not, however, have to point to specific legislation authorizing their anti-competitive conduct to prove they acted in accordance with an explicit state policy. *See Town of Hallie*, 471 U.S. at 42, 105 S.Ct. at 1718; *Southern Motor Carriers*, 471 U.S. at 64, 105 S.Ct. at 1730–31. A showing that they had general authority to act as they did will suffice. *See Town of Hallie*, 471 U.S. at 41–42, 44, 105 S.Ct. at 1717–18, 1719; *Southern Motor Carriers*, 471 U.S. at 64, 105 S.Ct. at 1730–31.

The Eleventh Circuit Court of Appeals has applied the state action immunity doctrine to a fact pattern similar to the one at hand. In *Commuter Transportation Systems v. Hillsborough County Aviation Authority*, 801 F.2d 1286 (11th Cir.1986), Commuter Transportation, a limousine service, sued the Hillsborough County Aviation Authority (HCAA). Commuter brought its antitrust action after HCAA declined to enter a contract with Commuter allowing it to pick up on-demand or unreserved passengers at the Tampa airport. Commuter alleged that HCAA conspired with Commuter's competitors to exclude it from picking up unreserved passengers. Commuter also alleged that HCAA's refusal to grant it a contract violated both federal and state antitrust law. *Id.* at 1288.

The court of appeals considered HCAA analogous to a municipality: HCAA "was created as a public instrumentality of the Florida legislature to develop and administer public airports in the Tampa, Florida region." *Id.* at 1290. The court noted that the State of Florida gave HCAA the authority

to negotiate contracts with businesses as it may deem necessary for the development and expansion of the airport and to grant concessions, upon such terms and conditions as it shall deem proper. It is clear that [HCAA's] actions pertaining to limousine service [were] contemplated by the state legislature and under *Parker [v. Brown*, HCAA] is immunized.

*Id.* at 1289. Moreover, the State of Florida sufficiently supervised HCAA. *Id.* at 1290. HCAA "is subject to state 'sunshine' laws, has police power jurisdiction, power of eminent domain, zoning authority, bonding authority, rulemaking power and is exempt from taxation." *Id.* "The governor appoints, and may remove for cause, all the regular members of [HCAA]." *Id.* at 1290–91. Thus, the court of appeals concluded: "State policy here clearly intended that [HCAA] may displace unrestrained business competition at the airport with regulation [or] monopoly public service." *Id.* at 1291. Although HCAA could displace unrestrained business competition, it could not illicitly conspire with another par-

ty to do so. *Id.* The court, however, found no evidence of an illicit conspiracy. *Id.*

As with HCAA, GOAA is a public body created by the Florida Legislature. It has broad powers to conduct its business. GOAA regulates the airport transportation services by limiting the number of entities that may offer on-demand ground transportation to airport passengers. Any anti-competitive impact caused by the alleged agreements between GOAA and Mears to regulate the transportation of airport passengers was foreseen by the Florida Legislature when it created GOAA and granted it broad powers to operate the airport. The State of Florida supervises the actions of GOAA  Five of the seven members of GOAA are appointed by the Governor. The Governor may suspend any appointed member for good cause. Moreover, GOLTA has offered no evidence of any illicit conspiracy between GOAA and Mears. Because the state action immunity doctrine precludes GOLTA from succeeding on its federal antitrust claims, a granting of summary judgment in favor of GOAA and Mears is appropriate.

## C. State Antitrust Claims

GOLTA has also brought state antitrust claims against GOAA and Mears under Florida Statutes §§ 542.18–.19 (1989). According to Florida law, "[a]ny activity or conduct ... exempt from the provisions of the antitrust laws of the United States is exempt from the provisions of this chapter." Fla.Stat. § 542.20 (1989); *Auton v. Dade City,* 783 F.2d 1009, 1010 n. 1 (11th Cir.1986) ("conduct exempt under federal antitrust law is also exempt from Fla.Stat. Ch. 542"). Because GOAA and Mears are exempt from GOLTA's federal antitrust claims, they are also exempt from its state antitrust claims. Summary judgment is granted with respect to those claims.

### III.  Conclusion

GOAA and Mears have shown that the undisputed facts as well as the reasonable inferences drawn therefrom do not establish a genuine issue of material fact that would warrant bringing this lawsuit to tri-

al. GOLTA has not presented evidence to support its claims. The state action immunity doctrine bars GOLTA's federal antitrust claims, and GOAA and Mears are exempt from GOLTA's state antitrust claims. Therefore, the court GRANTS the motions for summary judgment filed by GOAA and Mears on all counts of GOLTA's complaint.

It is SO ORDERED.