United States Court of Appeals,

Eleventh Circuit.

No. 94-2165.

PRAXAIR, INC., Plaintiff-Appellee, Cross-Appellant,

v.

FLORIDA POWER & LIGHT;  Florida Power Corp., Defendants-Appellants, Cross-Appellees.

Sept. 19, 1995.

Appeals from the United States District Court for the Middle District of Florida. (No. 88-1622-CIV-T-21C), Ralph W. Nimmons, Jr., Judge.

Before COX, Circuit Judge, RONEY and WOOD[*], Senior Circuit Judges.

RONEY, Senior Circuit Judge:

Florida Power Corp. and Florida Power & Light Co. appeal the district court's denial of summary judgment in which the utilities asserted state action immunity from Praxair, Inc.'s claim of federal antitrust liability.  Praxair cross-appeals the denial of its partial summary judgment motion.  At issue is whether state action can be inferred from the manner in which the State conducts itself in relation to the parties' attempts at competition.  Since there was sufficient state action so that the utilities should have been granted immunity on summary judgment, we reverse the contrary decision of the district court.

 Although neither party raised a question of jurisdiction, each filed briefs in response to a jurisdictional question raised by this Court.  It is not necessary to discuss the jurisdictional issues.  The district court granted Praxair's motion to certify for

[*]Honorable Harlington Wood, Jr., Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

immediate appeal the court's denial of its cross-motion for summary judgment. 28 U.S.C. § 1292(b). Although a prior panel of this Court denied permission, in order to remove any doubt about the jurisdiction of this panel to hear these fully argued appeals, we vacate the previous order and grant § 1292(b) jurisdiction of Praxair's appeal. There is collateral order appellate jurisdiction of the appeals of Florida Power and Florida Power & Light. *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 546-47, 69 S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949). Denial of state action immunity from antitrust liability by summary judgment is immediately appealable. *Commuter Transportation Systems, Inc. v. Hillsborough County,* 801 F.2d 1286, 1289 (11th Cir.1986); *see also Askew v. DCH Regional Health Care Authority,* 995 F.2d 1033, 1036 (11th Cir.), *cert. denied,* --- U.S. ----, 114 S.Ct. 603, 126 L.Ed.2d 568 (1993).

This lawsuit stems from Florida Power & Light's (FPL) refusal to negotiate a lower rate for Praxair and Florida Power Corp.'s (FPC) refusal to provide service because of a 1965 territorial agreement. Praxair, and its predecessor Union Carbide, is located in Mims in Brevard County, Florida, an area historically served by Florida Power & Light and, according to the utilities, specifically allocated to FPL in the territorial agreement. Praxair contends Brevard County was never included in the agreement which the Commission approved. The question presented is whether, in the order approving the territorial agreement *or in events since that time,* there has been sufficient "state action" by the Florida Public Service Commission which would allow FPC and FPL to divide

service territories in Brevard County without violating section 1 of the Sherman Act, 15 U.S.C. § 1. We hold there has been appropriate state action.

If a territorial agreement is made effective "solely by virtue of a contract, combination or conspiracy of private persons, individual or corporate," it would violate the Sherman Act. *Parker v. Brown,* 317 U.S. 341, 350, 63 S.Ct. 307, 313, 87 L.Ed. 315 (1942); 15 U.S.C. §§ 1, 2. Conduct that otherwise would violate federal antitrust laws may nevertheless be permissible when done under the aegis of the State. 317 U.S. at 350, 63 S.Ct. at 313; *Municipal Utilities Board of Albertville v. Alabama Power Co.,* 934 F.2d 1493 (11th Cir.1991).

For private conduct to qualify for immunity under the state action doctrine, the challenged restraint must meet a two-pronged test. *First,* it must be "clearly articulated and affirmatively expressed as state policy." *Second,* "the policy must be actively supervised by the State itself." *California Retail Liquor Dealers Ass'n v. Midcal Aluminum,* 445 U.S. 97, 105, 100 S.Ct. 937, 943, 63 L.Ed.2d 233 (1980). These two requirements operate hand-in-hand to ensure that the displacement of competition occurs only as a result of deliberate and intentional state policy. *Federal Trade Commission v. Ticor Title Insurance Co.,* 504 U.S. 621, 112 S.Ct. 2169, 119 L.Ed.2d 410 (1992). A clearly articulated policy can be established if a state statute authorizes an agency to regulate the area and "provides" for a regulatory scheme that inherently displaces unfettered business freedom. *Executive Town & Country Services, Inc. v. City of Atlanta,* 789 F.2d 1523, 1529 (11th

Cir.1986).

As to the first prong of *Midcal,* the district court at first noted that "Florida case law and ... Florida's current statutory and regulatory provisions ... has effectively displaced competition between electric utilities in the retail market" and indicates a "clearly articulated and affirmatively expressed state policy" to regulate retail electric service areas. Order at 9-11. *See Storey v. Mayo,* 217 So.2d 304, 307 (Fla.1968) (noting that "the powers of the Commission over these privately-owned utilities is omnipotent within the confines of [Chapter 366] and the limits of organic law), *cert. denied,* 395 U.S. 909, 89 S.Ct. 1751, 23 L.Ed.2d 222 (1969); *City Gas Co. v. Peoples Gas System, Inc.,* 182 So.2d 429, 435 (Fla.1965) (Chapter 366 of Florida Statutes "add up to what can be considered a very extensive authority over the fortunes and operation of the regulated entities"); Fla.Stat. § 366.04(3) (directing the Commission to exercise its powers to avoid "uneconomic duplication of generation, transmission, and distribution facilities"); *see also PW Ventures, Inc. v. Nichols,* 533 So.2d 281, 283 (Fla.1988) (holding that "the regulation of the production and sale of electricity [under Chapter 366] necessarily contemplates the granting of monopolies in the public interest").

As to the second element of *Midcal,* the district court concluded that generally "the Commission's extensive control over the validity and effect of such agreements negates any inference that the privately initiated agreements lack state supervision." Order at 18. The Florida Supreme Court has held that the effect of the Commission's approval of territorial agreements between public

utilities "is to make the approved contract an order of the commission, binding as such upon the parties. *City Gas,* 182 So.2d at 436.

Having said that, however, the district court then denied the parties' cross-motions for summary judgment on the ground there was a disputed issue of material fact concerning whether Mims was located in the area covered by the approved agreement. Praxair had argued that the Commission had never approved an agreement between the utilities that included Brevard County.

In our judgment, the district court erroneously focused primarily on the utilities' and Commission's intent in the original proceedings which culminated in the 1965 approval order, and did not give proper consideration to the parties' conduct and the Commission activity since that time.

The validity of a territorial agreement under Florida's noncompetition policy is premised on Commission approval. *See City Gas,* 182 So.2d at 436; Fla.Stat. §§ 366.04(2), .05(7)-(8). If Florida Power denied service to Praxair presumably because of a territorial agreement, but the area in question was never approved by the Commission, the utilities' actions would not merit state action immunity because of the lack of "active state supervision." *Ticor,* 504 U.S. at 636, 112 S.Ct. at 2178. If however the Commission has allocated Brevard County to Florida Power & Light, then the utilities should be accorded state action immunity and summary judgment is appropriate. *Menuel v. City of Atlanta,* 25 F.3d 990, 994 (11th Cir.1994).

Whether the particular anticompetitive conduct was approved by

the State turns on two factual inquiries. The first concerns events surrounding the Commission's approval of the territorial agreements that resulted in Order No. 3799 in 1965. The second relates to the parties' actions since the 1965 order which culminated in the Commission's 1989 declaratory statement interpreting that order.

In its 1965 Order, the Commission expressly approved several territorial agreements involving FPL and FPC, including the agreement at issue. The purpose of the agreement was to avoid duplication of service in areas of the state where there was significant population growth and where the utilities' service areas were converging. According to the Commission, unrestrained competition in those areas would be inefficient and uneconomical both for the utilities and its customers. The Commission's approval "allow[ed the utilities] to agree not to serve within certain areas when requested to do so by a person applying for electrical service, if that area is already served by another utility." Neither utility could deviate from the order without prior approval from the Commission. *In re: Proposed Territorial Agreement Between Florida Power & Light Co. and Florida Power Corp.,* No. 7420-EU, Order No. 3799 (Apr. 28, 1965).

The territorial agreements which were the basis of the order originally were agreed upon by the utilities in 1958 and expanded in 1962. The 1958 letter agreement said that neither company would serve or offer to serve a customer outside the service area "shown on the following maps." Attached were highway maps of Volusia County and Seminole County with red pencil lines to distinguish

between the respective service areas.  The 1962 agreement expanded the territory to the south and included maps for Orange and Osceola Counties.  No map was submitted specifically for Brevard County. Brevard County was shown on both maps however, and the border line ran along the entire Brevard County line.

Attached to the utilities' application to the Commission, and later incorporated by reference into Order No. 3799, was a composite map which similarly depicted a red line demarcating the entire proposed geographic boundary.  The line commenced at the northwestern corner of Volusia County at Lake George, meandered eastward between Volusia and Seminole Counties, and continued southward along the border between Orange, Osceola, and Brevard Counties.  The line terminated at the southernmost point of Brevard County.  In public hearings held before the Commission, witnesses testified that areas to the east or right of the red boundary line were to be served by FPL, and those to the west or left of the line would be served by FPC.  Brevard County is located in the area east of the line, in FPL's service area.  During the hearing, witnesses discussed the need for the agreement due to growth in areas between Volusia and Seminole Counties and between Orange and Osceola Counties.  The witnesses stated there was competition to a lesser, but still important, degree in the Orange-*Brevard* County and Osceola-*Brevard* County areas.  Brevard County was mentioned only one other time during the hearing.  Testimony indicated that the boundary line had not been extended further to the north because that area was served by a rural electric cooperative.  Similarly, it was not extended south of Brevard County because those areas

were not developed to the extent the utilities anticipated competition for the same customers.

Nearly twenty-five years later, during which time Florida Power & Light solely provided electricity to Brevard County, FPL asked the Commission to issue a declaratory statement whether the utilities would violate Order No. 3799 if they complied with Praxair's request for Florida Power to sell Praxair electricity and for Florida Power & Light to "wheel" the FPC-generated electricity to Praxair's plant. Wheeling is a process whereby a utility transfers power generated by a second utility over the first utility's power lines. The Commission's statement, issued in February 1989, concluded that Florida Power & Light's wheeling power to the Mims plant would be in contravention of its earlier order.

A logical interpretation of the Commission's 1965 order is that Brevard County was included. In the 1958 letter agreement, the territorial boundary was a two-sided, east-west division: the area east of the line, Volusia County, was allocated to FPL and the area west of the line, Seminole County was given to FPC. The 1962 agreement took the boundary further south. It is undisputed that the area west of the boundary, Orange and Osceola Counties, was allocated to FPC. It is entirely plausible and a reasonable explanation that the area east of the boundary, which encompassed only Brevard County, belonged to FPL. Testimony during the public hearings confirm that view.

Even if it was not clearly intended in the original agreements to include Brevard County, however, the way the parties

and particularly the Commission have conducted themselves since that time indicates that Brevard County has been allocated to FPL's service area. An agency's interpretation of its own regulations must be given controlling weight unless that interpretation is plainly erroneous or inconsistent with the regulation. *Stinson v. United States,* --- U.S. ----, ----, 113 S.Ct. 1913, 1919, 123 L.Ed.2d 598 (1993); *Florida Gas Transmission v. FERC,* 741 F.2d 1307, 1309 (11th Cir.1984); *PW Ventures,* 533 So.2d at 281. Florida Power & Light was already serving Mims and Brevard County when the agreement was approved. For 30 years since that time, the Commission and the utilities have treated Mims as part of Florida Power & Light's service territory. During its 1981 to 1987 comprehensive review of approved territorial agreements, the Commission developed maps which depicted Brevard County in FPL's service area. Thereafter, the Commission denied its request to sell electricity to Praxair at a special rate. Finally, in its 1989 declaratory statement, the Commission specifically found that "pursuant to the applicable Florida Statutes and case law," Florida Power & Light could not wheel power to Praxair because it would be in contravention of the approved territorial agreement. Order No. 20808 at 5. In view of the evidence before it, the Commission reasonably interpreted the prior agreement to allocate Brevard County to Florida Power & Light.

Florida's regulatory scheme met the two-pronged *Midcal* test so that the utilities are immune from Sherman Act challenges. The court's denial of Florida Power's and Florida Power & Light's joint motion for summary judgment is reversed. Praxair's cross-appeal of

the denial of its motion for summary judgment, which is based on the premise that Brevard County was not included in the approved territory agreement, is affirmed.

APPEAL:  REVERSED.

CROSS-APPEAL:  AFFIRMED.