[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 19-12227

————————————————

D.C. Docket No. 1:18-cv-02328

SMILEDIRECTCLUB, LLC,

Plaintiff—Appellee,

versus

TANJA D. BATTLE,
in her official capacity as Executive Director of
the Georgia Board of Dentistry,
et al.,

Defendants—Appellants.

————————————————

Appeal from the United States District Court
for the Northern District of Georgia

————————————————

(July 20, 2021)

Before WILLIAM PRYOR, Chief Judge, and WILSON, MARTIN, JORDAN, ROSENBAUM, JILL PRYOR, NEWSOM, BRANCH, GRANT, LUCK, LAGOA,

BRASHER, and TJOFLAT, Circuit Judges.[*]

JORDAN, Circuit Judge, delivered the opinion of the Court, in which WILLIAM PRYOR, Chief Judge, and WILSON, MARTIN, ROSENBAUM, JILL PRYOR, NEWSOM, BRANCH, GRANT, LUCK, LAGOA, BRASHER, and TJOFLAT, Circuit Judges, joined.

JORDAN, Circuit Judge:

Sitting as a full court, we hold that interlocutory appeals may not be taken under the collateral order doctrine from the denials of so-called "state-action immunity" under *Parker v. Brown*, 317 U.S. 341, 350-52 (1943), and its progeny. We therefore dismiss this appeal by the members of the Georgia Board of Dentistry for lack of appellate jurisdiction.

## I

SmileDirectClub, LLC, offers orthodontic treatments, including teeth alignment, at steep discounts. Its business model is described in detail in the panel opinion, *see SmileDirectClub, LLC v. Battle*, 969 F.3d 1134, 1136-37 (11th Cir. 2020), and we briefly summarize it here.

Patients visit a SmileDirect location, where a technician takes a digital scan of their teeth. The scans are sent to SmileDirect's lab to create a model. They are also sent to a Georgia-licensed dentist or orthodontist, who determines whether any

---

[*] Judge Gerald Bard Tjoflat took senior status on November 19, 2019 and elected to participate in this decision pursuant to 28 U.S.C. § 46(c)(2).

oral conditions warrant further investigation or prevent the patient from being a candidate for SmileDirect's alignment treatment. If there are no issues or problems, the dentist or orthodontist creates a patient-specific plan that results in a prescription for SmileDirect's clear aligners. The patient then receives the aligners by mail from SmileDirect.

In 2018, the Georgia Board of Dentistry—a state-organized entity mostly comprised of practicing dentists—voted to amend its Rule 150-9-.02, which relates to the expanded duties of dental assistants. As explained in the panel opinion, the "practical effect of the proposed amendment w[as] . . . to require that digital scans, like the ones [performed] by SmileDirect at [its locations,] only take place when a licensed dentist is physically in the building where the scans are taking place, and to prohibit them otherwise." *Id.* at 1137. Georgia Governor Nathan Deal approved the amendment of Rule 150-9-.02 through a "Certification of Active Supervision." *See id.* (internal quotation marks omitted).

SmileDirect then sued a number of defendants, including the Board members in their individual capacities. As relevant here, SmileDirect alleged that the Board's amendment of Rule 150-9-.02 violated the Sherman Act, 15 U.S.C. § 1, which prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or [interstate] commerce." The Board members moved to dismiss the antitrust claims against them in their individual capacities.

3

They argued that they were entitled to dismissal based on so-called "state action immunity" under *Parker* because they acted on behalf of Georgia in amending Rule 150-9-.02.  The district court denied the motion, and the Board members filed an interlocutory appeal as permitted by our precedent. *See, e.g.*, *Commuter Transp. Sys., Inc. v. Hillsborough Cnty. Aviation Auth.*, 801 F.2d 1286, 1289-90 (11th Cir. 1986); *Praxair, Inc. v. Fla. Power & Light Co.*, 64 F.3d 609, 611 (11th Cir. 1995). The panel affirmed the district court's denial of the Board members' motion to dismiss, *see SmileDirectClub*, 969 F.3d at 1143-46, and we took the case en banc to consider whether denials of *Parker* "state action immunity" can be appealed prior to final judgment.[1]

## II

Whether an interlocutory appeal can be taken from the denial of *Parker* "state action immunity" presents a question of law subject to plenary review.  *See Pinson v. JPMorgan Chase Bank, N.A.*, 942 F.3d 1200, 1206 (11th Cir. 2019).  The answer to that question involves consideration of two matters—the scope of the collateral

---

[1] The district court ruled that SmileDirect's Sherman Act claim, as pled, was "sufficient to survive a Rule 12(b)(6) motion to dismiss on *Parker* immunity grounds."  D.E. 51 at 13.  Like the panel, we conclude that the district court's denial of the *Parker* defense was conclusive at this stage of the litigation. *See SmileDirectClub*, 969 F.3d at 1138 n.4.  The district court did not definitively reject the *Parker* defense because the facts as pled might not be the facts at summary judgment or trial.  But this does not mean that the district court's Rule 12(b)(6) ruling was tentative. *Cf. Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (explaining that a motion to dismiss on qualified immunity grounds takes the defendant's conduct as alleged in the complaint, while a motion for summary judgment on qualified immunity grounds considers the evidence in the light most favorable to the plaintiff).

order doctrine and the nature of *Parker* "state action immunity"—so we begin with some background.

## A

As a circuit court, we generally only have jurisdiction over appeals from "final decisions of the district courts." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 103 (2009) (quoting 28 U.S.C. § 1291). There are a handful of exceptions to this final-judgment rule, among them the collateral order doctrine. First recognized in *Cohen v. Beneficial Industrial Loan Corporation*, 337 U.S. 541, 546 (1949), the doctrine allows for immediate appeals of a "small class" of non-final orders.

The collateral order doctrine is sometimes called an "exception" to the final-judgment rule, but the doctrine "is best understood not as an exception to the 'final decision' rule laid down by Congress in § 1291, but as a 'practical construction' of it." *Digit. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994) (citing *Cohen*, 337 U.S. at 546). In other words, "[§ 1291] entitles a party to appeal not only from a district court decision that ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment, but also from a narrow class of decisions that do not terminate the litigation, but must, in the interest of achieving a healthy legal system, nonetheless be treated as final." *Id*. (internal quotation marks and citations omitted). *Accord* 19 Moore's Federal Practice § 202.07[1] (3d ed. 2021).

The Supreme Court has described the collateral order doctrine as "narrow." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981). And it has remarked that the doctrine is only available in a "limited category of cases." *Flanagan v. United States*, 465 U.S. 259, 265 (1984) (internal quotation marks and citations omitted). In its more recent decisions regarding the doctrine, the Court has repeatedly "emphasiz[ed] its modest scope." *Will v. Hallock*, 546 U.S. 345, 350 (2006). "[A]lthough the Court has been asked many times to expand the 'small class' of collaterally appealable orders, [it] ha[s] instead kept it narrow and selective in its membership." *Id. See also Digit. Equip. Corp.*, 511 U.S. at 868 ("[W]e have also repeatedly stressed that the 'narrow' exception should stay that way and never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered[.]") (citation omitted); 15A Charles Alan Wright et al., Federal Practice and Procedure, § 3911 (2d ed. 1992 & April 2021 update) ("The common admonition that this doctrine is a narrow 'exception' to the final-judgment doctrine may be revised to warn that it is a very narrow exception.").

In order to fall within the collateral order doctrine and be immediately appealable, a non-final order must satisfy three conditions. The "order must [1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively

6

unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978) (citing *Cohen*, 337 U.S. at 546). This formulaic approach "serves as a reminder that collateral order theory does not justify an ad hoc balancing of the arguments for and against immediate appeal on a case-by-case basis." Wright et al., 15A Federal Practice and Procedure, at § 3911.[2]

**B**

In *Parker*, 317 U.S. at 350-52, the Supreme Court held as a statutory matter that the Sherman Act does not reach state action. "[N]othing in the language of the Sherman Act or in its history," the Court wrote, "suggests that its purpose was to restrain a state or its officers or agents from activities directed by its legislature." *Id*. at 350-51. The Court explained that "[i]n a dual system of government in which, under the Constitution, the States are sovereign, . . . an unexpressed purpose to nullify a state's control over its officers and agents is not lightly to be attributed to Congress." *Id*. at 351. That intuition shaped the Court's interpretation of the Sherman Act. Although California had imposed a "restraint" on trade, that restraint resulted from "an act of government which the Sherman Act did not undertake to prohibit." *Id.* at 352.

---

[2] As explained later, we conclude that the Board members cannot meet the third condition of effective unreviewability, and therefore do not discuss the first and second conditions.

The Court later extended *Parker* to private parties and municipalities in certain circumstances. *See Cal. Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 104-06 (1980) (private parties); *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 38 (1985) (municipalities and other political subdivisions). Private parties, like the Board members in this case, must satisfy the "clear articulation" and "active supervision" standards set out in *Midcal*, 445 U.S. at 105, and its progeny in order to receive the benefit of *Parker*.

### III

We held in *Commuter Transportation Systems*, 801 F.2d at 1289-90—a case involving antitrust claims against a state airport authority—that a non-final order denying a *Parker*-based summary judgment motion is immediately appealable under the collateral order doctrine. With respect to the unreviewability condition, we characterized *Parker* as providing immunity from suit, and not just a defense from liability. *See id.* at 1289. And because the denial of a claim of immunity from suit falls within the collateral order doctrine, *see, e.g.*, *Mitchell v. Forsyth*, 472 U.S. 511, 525, 529-30 & n.10 (1985) (holding that denials of absolute and qualified immunity are immediately appealable under the doctrine), we reasoned that the denial of a

*Parker*-based motion is effectively unreviewable after final judgment.    *See Commuter Transp. Sys.*, 801 F.2d at 1289.[3]

There is some support for this aspect of *Commuter Transportation Systems*. *See Martin v. Mem'l Hosp. at Gulfport*, 86 F.3d 1391, 1395-97 (5th Cir. 1996); 1A Phillip Areeda & Herbert Hovenkamp, Antitrust Law § 222b (4th ed. 2013).  For example, in *Martin* the Fifth Circuit also treated *Parker* as providing "an entitlement not to stand trial under certain circumstances." 86 F.3d at 1395 (internal quotation marks and citation omitted).  Yet just four years later, the full Fifth Circuit—in a unanimous opinion—retreated from this facet of *Martin* in *Surgical Care Center of Hammond, L.C. v. Hospital Service District No. 1 of Tangipahoa Parish*, 171 F.3d 231, 234 (5th Cir. 1999) (en banc): "While thus a convenient shorthand, '*Parker* immunity' is more accurately a strict standard for locating the reach of the Sherman Act than the judicial creation of a defense to liability for its violation."

---

[3] We later extended the jurisdictional ruling in *Commuter Transportation Systems* to private parties, but without explaining why they too are entitled to an immediate appeal when their *Parker* arguments are rejected before trial. *See Praxair*, 64 F.3d at 611.  As things stand, we are the only circuit to allow private parties like the Board members to take an interlocutory appeal from the denial of a *Parker*-based motion to dismiss or motion for summary judgment.  The other circuits to address the issue have held that private parties cannot use the collateral order doctrine to appeal a non-final order rejecting the application of *Parker*. *See Auraria Student Hous. v. Campus Village Apartments, LLC*, 703 F.3d 1147, 1151 (10th Cir. 2013); *Acoustic Sys., Inc. v. Wenger Corp.*, 207 F.3d 287, 292-94 (5th Cir. 2000); *We, Inc. v. City of Philadelphia*, 174 F.3d 322, 329 (3d Cir. 1999); *Segni v. Com. Off. of Spain*, 816 F.2d 344, 346 (7th Cir. 1987).

**A**

"[O]rders denying certain immunities are strong candidates for prompt appeal under § 1291" by way of the collateral order doctrine. *See Digit. Equip. Corp.*, 511 U.S. at 871. Yet there is a "crucial distinction between a right not to be tried and a right whose remedy requires the dismissal of charges [or claims]." *United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 269 (1982). This is because "[t]he former necessarily falls into the category of rights that can be enjoyed only if vindicated prior to trial," whereas "[t]he latter does not." *Id.* "Those seeking immediate appeal . . . naturally argue that any order denying a claim of right to prevail without trial satisfies the third condition [of effective unreviewability]. But this generalization is too easy to be sound and, if accepted, would leave the final order requirement of § 1291 in tatters." *Hallock*, 546 U.S. at 351.

We conclude that *Commuter Transportation Systems* incorrectly characterized *Parker* as creating an immunity from trial. Though the Supreme Court has used the shorthand term "*Parker* immunity," *see, e.g.*, *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 370 (1991), it has also referred to *Parker* as a "defense" to an antitrust claim, *see, e.g.*, *Town of Hallie*, 471 U.S. at 39, so the "immunity" phrasing is not conclusive. We must figure out what *Parker* really represents in order to avoid what Justice Cardozo referred to as the "tyranny of labels." *Snyder v. Massachusetts*, 291 U.S. 97, 114 (1934). *See also Surgical Care*

*Ctr.*, 171 F.3d at 234 (addressing the "*Parker* immunity" shorthand: "The price of the shorthand of using similar labels for distinct concepts is the risk of erroneous migrations of principles.").

The Supreme Court has told us that "*Parker* and its progeny are premised on an understanding that respect for the States' coordinate role in government counsels against reading the federal antitrust laws to restrict the States' sovereign capacity to regulate their economies and provide services to their citizens." *FTC v. Phoebe Putney Health Sys., Inc.*, 568 U.S. 216, 236 (2013). In our view, *Parker* and its progeny address the scope of the Sherman Act, and stand only for the proposition that the Act "does not reach state action, not that it cannot do so." *SmileDirectClub*, 969 F.3d at 1147 (Jordan, J., concurring).

In reading *Parker* this way, we join the Fourth, Sixth, and Ninth Circuits. *See SolarCity Corp. v. Salt River Project Agric. Improvement & Power Dist.*, 859 F.3d 720, 726 (9th Cir. 2017) ("[T]he state[ ]action doctrine is a defense to liability, not immunity from suit."); *S.C. State Bd. of Dentistry v. FTC*, 455 F.3d 436, 444 (4th Cir. 2006) ("The Supreme Court did not say in *Parker* that states and their agencies are immune from federal restrictions placed upon a state's regulation of commerce within its borders or that Congress *could not* otherwise make states liable for antitrust violations."); *Huron Valley Hosp., Inc. v. City of Pontiac*, 792 F.2d 563, 567 (6th Cir. 1986) ("[T]he [*Parker*] exemption is not an 'entitlement' of the same

11

magnitude as qualified immunity or absolute immunity, but rather is more akin to a defense to the original claim."). We also align ourselves with the Third, Fifth, and Tenth Circuits, which have similarly read *Parker* in opinions not addressing the collateral order doctrine. *See Kay Elec. Coop v. City of Newkirk*, 647 F.3d 1039, 1042 (10th Cir. 2011) (Gorsuch, J.) (noting that "the term 'immunity' may be a bit strong since the Court [in *Parker*] held only that Congress *hadn't* covered state action, not that it *couldn't*"); *Surgical Care Ctr.*, 171 F.3d at 234 ("'*Parker* immunity' is more accurately a strict standard for locating the reach of the Sherman Act than the judicial creation of a defense to liability for its violation."); *Duke & Co. v. Foerster*, 521 F.2d 1277, 1279 n.5 (3d Cir. 1975) ("[T]he thrust of *Parker* is that the Sherman Act is simply inapplicable to activity mandated by state authority."), *overruled in part on other grounds by Omni Outdoor Advert.*, 499 U.S. at 382-83.

The Supreme Court has cautioned federal courts to "view claims of a right not to be tried with skepticism, if not a jaundiced eye," because "virtually every right that could be enforced appropriately by pretrial dismissal might loosely be described as conferring a right not to stand trial." *Digit. Equip. Corp.*, 511 U.S. at 873 (internal quotation marks and citations omitted). Applying that skepticism here, we agree with the Fourth, Sixth, and Ninth Circuits that *Parker* did not arise from any special concerns that would result from having to go to trial, and that *Parker* protection is not lost if an immediate appeal is denied. *See SolarCity Corp.*, 859 F.3d at 726; *S.C.*

12

*State Bd. of Dentistry*, 455 F.3d at 444; *Huron Valley Hosp.*, 792 F.2d at 567.  *Cf. Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 254 (2010) ("[T]o ask what conduct [a statute] reaches is to ask what conduct [it] prohibits, which is a merits question.").

The treatment of the *Noerr-Pennington* doctrine provides an apt analogy. That doctrine provides, in the Supreme Court's words, that "defendants are immune from antitrust liability for engaging in conduct (including litigation) aimed at influencing decisionmaking by the government."  *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545, 556 (2014).  Despite the "immunity" label placed on the *Noerr-Pennington* doctrine, we have recognized that it "can be said to spring directly from a construction of the Sherman Act" and from consideration of First Amendment concerns.  *See McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1559 (11th Cir. 1992).  And several circuits have concluded that a "denial of immunity under the *Noerr-Pennington* doctrine is not an appealable collateral order . . . because it is effectively reviewable after final judgment." 19 Moore's Federal Practice, at § 202.07[1] & n. 53.8 (citing *Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*, 711 F.3d 1136, 1138-41 (9th Cir. 2013); *Hinshaw v. Smith*, 436 F.3d 997, 1003 (8th Cir. 2006); *Acoustic Sys., Inc.*, 207 F.3d at 295-96; *We, Inc.*, 174 F.3d at 328-30).

What the Ninth Circuit said about *Noerr-Pennington* is just as true of *Parker*: "As a principle of statutory interpretation, [*Parker*] is no more a protection from litigation itself than is any other ordinary defense, affirmative or otherwise[,] and constitutionally grounded or not." *Nunag-Tanedo*, 711 F.3d at 1140.  So, insofar as the unreviewability condition of the collateral order doctrine is concerned, *Commuter Transportation Systems* wrongly equated a *Parker* defense with an immunity from suit.  *See generally McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331, 1339 (11th Cir. 2007) ("A party is entitled to a collateral order appeal when it has a substantial claim to a true immunity from suit: i.e., an immunity that not only insulates the party from liability, but also prevents the party from being exposed to discovery and/or trial.").[4]

## B

We close with a final observation.  The third condition of the collateral order doctrine, which asks whether a right or claim can be vindicated adequately on appeal following final judgment, "simply cannot be answered without a judgment about the

---

[4] We acknowledge that some of the earlier Supreme Court cases applying the collateral order doctrine permitted appeals in scenarios not involving a claimed immunity from suit. *See, e.g.*, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 170-72 (1974) (imposition of notice costs in a class action); *Swift & Co. Packers v. Compania Colombiana del Caribe*, 339 U.S. 684, 688-89 (1950) (attachment of a vessel in an admiralty proceeding).  Those cases, however, are too far removed from the *Parker* defense asserted here to be of much help.  We are also wary of applying those cases beyond their particular facts given the Supreme Court's comment that "the collateral[ ]order doctrine may have expanded beyond the limits dictated by its internal logic and the strict application of the criteria set out in *Cohen*." *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009).

value of the interests that would be lost through rigorous application of a final judgment requirement." *Mohawk Indus.*, 558 U.S. at 107 (quoting *Digit. Equip. Corp.*, 511 U.S. at 878-79). The "decisive consideration is whether delaying review until the entry of final judgment 'would imperil a substantial public interest' or 'some particular value of a high order.'" *Id.* (quoting *Hallock*, 546 U.S. at 352-53). In determining the answer to this question, the focus is not on the specific case under consideration, but rather "on 'the entire category to which a claim belongs.'" *Id.* (quoting *Digit. Equip. Corp.*, 511 U.S. at 868). "The crucial question . . . is not whether an interest is important in the abstract; it is whether deferring review until final judgment so imperils the interest as to justify the cost of allowing immediate appeal of the entire class of relevant orders." *Id.* at 108.

Though its reading of the Sherman Act was partly rooted in federalism, *Parker* does not reflect a value of sufficiently high order to satisfy the third condition of the collateral order doctrine. This is admittedly a normative judgment, but the Supreme Court's 2006 decision in *Hallock* leads us to our conclusion.

In *Hallock*, the plaintiff and her company filed suit against the United States under the Federal Tort Claims Act, 28 U.S.C. § 2674. They alleged that federal agents had damaged property seized pursuant to a search warrant, leading to the loss of the business. *See Hallock*, 546 U.S. at 347-48. The district court dismissed the suit without reaching the merits, ruling that the agents' conduct fell within 28 U.S.C.

§ 2680(e), an exception to the FTCA's waiver of sovereign immunity. *See id.* at 348. When the plaintiff filed a suit against the agents for constitutional deprivations under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the agents sought dismissal under 28 U.S.C. § 2676, the so-called "judgment bar" of the FTCA. They argued that the judgment in the FTCA action barred the *Bivens* suit. The district court denied the motion to dismiss, and the agents sought to appeal under the collateral order doctrine. *See id.* at 348-49. The Second Circuit ruled that the agents could take an immediate appeal, but the Supreme Court, in a unanimous opinion, vacated for lack of jurisdiction. *See id.* at 355.

The Court pointed to non-final denials of immunity—e.g., qualified immunity, absolute immunity, and Eleventh Amendment immunity—and to the denial of a double jeopardy claim as the sort of cases that warrant interlocutory appeal under the collateral order doctrine. *See id.* at 350. Then, explaining that not every right to dismissal can be considered a right not to stand trial, the Court confirmed that it is "some particular value of a high order," i.e., "avoidance of trial that would imperil a substantial public interest, that counts when asking whether an order is 'effectively' unreviewable if review is to be left until later." *Id.* at 352-53. Turning to § 2676's judgment bar, the Court concluded that no such public interest was at stake notwithstanding the sovereign immunity overtones:

> It is not the preservation of initiative but the avoidance of litigation for its own sake that supports the judgment bar,

16

and if simply abbreviating litigation troublesome to Government employees were important enough for *Cohen* treatment, collateral order appeal would be a matter of right whenever the Government lost a motion to dismiss under the [FTCA], or a federal officer lost one on a *Bivens* action, or a state official was in that position in a case under 42 U.S.C. § 1983, or *Ex Parte Young*, 209 U.S. 123 [ ] (1908).

*Id.* at 353-54. The Court finished its opinion by analogizing to a res judicata/claim preclusion defense, a denial of which would not merit an immediate appeal under the collateral order doctrine. *See id.* at 355 ("The judgment bar at issue in this case has no claim to greater importance than the typical defense of claim preclusion[.]").

Given what *Hallock* held, and what it said, we are unpersuaded by the Board members' arguments that *Parker* reflects a value of sufficiently high order because its reading of the Sherman Act is based in part on federalism concerns. If the Board members were correct, then the collateral order doctrine would potentially permit an immediate appeal of any pretrial order rejecting a claim by a state or its officials (or private parties acting in concert with a state) that a statute does not cover their conduct. The Supreme Court has never hinted at such an expansive view of the collateral order doctrine, and we decline to sanction it here. Effective review remains available after final judgment because "[a]ppellate courts can remedy the [erroneous denial of *Parker* protection] . . . by vacating an adverse judgment." *Mohawk Indus.*, 558 U.S. at 109. A denial of a *Parker* defense, therefore, does not satisfy the unreviewability condition of *Cohen*. *Cf. Digit. Equip. Corp.*, 511 U.S. at

17

878 (a right to be free from trial "by [private] agreement does not rise to the level of importance needed for recognition under § 1291").

This does not mean that the denial of a dispositive motion grounded in *Parker* can never be reviewed prior to final judgment. For example, 28 U.S.C. § 1292(b) gives a circuit court the discretion to hear an interlocutory appeal if the district court concludes that the matter involves "a controlling question of law as to which there is substantial ground for difference of opinion" and that "an immediate appeal from the order may materially advance the ultimate termination of the litigation." This avenue, we think, gives those who seek dismissal of antitrust claims based on *Parker* an avenue to obtain interlocutory review. *See Mohawk Indus.*, 558 U.S. at 110-11. There is also the rulemaking process. If states, municipalities, and private parties believe that there should be immediate review of a rejected *Parker* defense, they can propose a rule of appellate procedure that so provides. *See id.* at 114.[5]

## IV

Non-final denials of *Parker* protection do not fall within the collateral order doctrine. The appeal by the members of the Georgia Board of Dentistry is therefore dismissed for lack of jurisdiction.

**APPEAL DISMISSED.**

---

[5] We decided *Commuter Transportation Systems* in 1986, four years before Congress amended 28 U.S.C. § 2072(c), a provision of the Rules Enabling Act, to authorize the Supreme Court to adopt more nuanced finality requirements through rulemaking. *See Mohawk Indus.*, 558 U.S. at 113-14.

WILLIAM PRYOR, Chief Judge, joined by BRASHER, Circuit Judge, concurring:

I join Judge Jordan's opinion for the Court in full. I write separately to explain why the Court is right to overrule the line of precedent beginning with *Commuter Transportation Systems, Inc. v. Hillsborough County Aviation Authority*, 801 F.2d 1286 (11th Cir. 1986). This appeal presents the rare case in which overruling a circuit precedent is appropriate.

Overruling circuit precedent is and should be a "rare step." *McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076, 1096 (11th Cir. 2017) (en banc). "Stability and predictability are essential factors in the proper operation of the rule of law[.]" *Id.* (alteration rejected) (internal quotation marks omitted). So we "should not lightly overrule past decisions." *Id.* (quoting *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 403 (1970)). Our caution is especially important when we revisit decisions based on statutes "because Congress remains free to alter what we have done." *Id.* (internal quotation marks omitted).

But stare decisis is not an "inexorable command." *Payne v. Tennessee*, 501 U.S. 808, 828 (1991). We may overrule a precedent if a "special justification" exists to do so. *Allen v. Cooper*, 140 S. Ct. 994, 1003 (2020) (internal quotation marks omitted). For example, we may overrule a precedent when it is "plainly and palpably wrong" and overruling would not "result in more harm than continuing to follow the erroneous decision." *McCarthan*, 851 F.3d at 1096 (quoting Bryan A.

19

Garner et al., *The Law of Judicial Precedent* § 46, at 388 (2016)). And we may overrule a precedent if its "statutory and doctrinal underpinnings have eroded and there has not been significant reliance on the precedent." *Id.* (citing *Kimble v. Marvel Entm't, LLC*, 576 U.S. 446, 458 (2015)).

Before we overrule a precedent, we weigh three considerations: the wrongness of the precedent, its negative consequences, and the extent to which it has generated reliance interests. *Ramos v. Louisiana*, 140 S. Ct. 1390, 1414–15 (2020) (Kavanaugh, J., concurring in part). In this appeal, each consideration counsels in favor of overruling *Commuter Transportation Systems*.

First, as we unanimously recognize, *Commuter Transportation Systems* is wrong. The wrongness of a decision is "[t]he primary and most important factor to weigh in considering whether to overrule an earlier decision." Garner et al., *The Law of Judicial Precedent* § 47, at 397. We should ask "how wrong the precedent is as a matter of law." *Ramos*, 140 S. Ct. at 1415 (Kavanaugh, J., concurring in part). If the error is "clear and unambiguous," then the wrongness factor weighs heavily in favor of correction. *McCarthan*, 851 F.3d at 1096 (internal quotation marks omitted).

As the opinion for the Court ably explains, *Commuter Transportation Systems* is clearly and unambiguously wrong. It misunderstands a defense to liability as an immunity from suit. *See Commuter Transp. Sys.*, 801 F.2d at 1289.

20

So-called "state-action immunity" flows from the fact that state action falls outside the ambit of the Sherman Act as written. *Parker v. Brown*, 317 U.S. 341, 350–52 (1943). A statute can confer a right not to be tried—that is, an immunity from suit—only through an "explicit statutory . . . guarantee that trial will not occur." *Digit. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 874 (1994) (internal quotation marks omitted). By contrast, a statutory omission establishes a mere defense to liability. *Id.* Our confusion about this distinction led us to conclude mistakenly that a non-final order based on *Parker* is immediately appealable under the collateral-order doctrine. Court Op. at 8, 10. Properly understood as a defense to liability, state-action immunity does not satisfy the requirements for immediate appealability. *Cf. Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 42 (1995) (explaining that the denial of qualified immunity is immediately appealable because qualified immunity is "an *immunity from suit* rather than a mere defense to liability" (internal quotation marks omitted)).

Second, *Commuter Transportation Systems* has significant negative consequences. To evaluate whether a precedent causes "more harm than good," we must evaluate a range of consequences. *McCarthan*, 851 F.3d at 1096. As a legal matter, *Commuter Transportation Systems* is inconsistent with the applicable legal doctrines. We must consider "consistency and coherence with other decisions" when we consider the jurisprudential consequences of a precedent. *Ramos*, 140 S.

21

Ct. at 1415 (Kavanaugh, J., concurring in part). After all, one of the purposes of stare decisis is to "promote[] the evenhanded, predictable, and consistent development of legal principles." *Payne*, 501 U.S. at 827. An outlier decision undermines this function by muddling the law, so it deserves "less precedential weight." Garner et al., *The Law of Judicial Precedent* § 47, at 397–98. *Commuter Transportation Systems* takes a liberal approach toward immunities from trial that is at odds with the narrowness of the doctrine. *See Commuter Transp. Sys.*, 801 F.2d at 1289. The Supreme Court has made clear that we should "view claims of a 'right not to be tried' with skepticism, if not a jaundiced eye." *Digit. Equip. Corp.*, 511 U.S. at 873. As mentioned, "[a] right not to be tried" in the relevant sense "rests upon an explicit statutory or constitutional guarantee that trial will not occur." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 801 (1989). Otherwise, "virtually every right that could be enforced appropriately by pretrial dismissal might loosely be described as conferring a 'right not to stand trial.'" *Digit. Equip. Corp.*, 511 U.S. at 873.

Because *Parker* creates only a defense to liability instead of a right not to be tried, it is also in tension with the collateral-order doctrine. The Supreme Court has explained that the collateral-order doctrine is "narrow": the criteria for immediate appealability are "stringent," few kinds of nonfinal orders qualify, and it "should stay that way." *Id.* at 868 (internal quotation marks omitted); *see* Court Op. at 6

22

(collecting cases). Allowing interlocutory appeal as of right for a defense to liability contravenes our mandate to keep the "'small class' of collaterally appealable orders . . . narrow and selective in its membership." *Will v. Hallock*, 546 U.S. 345, 350 (2006).

As a practical matter, allowing unnecessary interlocutory appeals taxes the legal system. Although *Parker*-based interlocutory appeals are relatively infrequent, they are burdensome whenever they occur. Myriad problems "inherently accompan[y]" interlocutory appeals. *Richardson-Merrell Inc. v. Koller*, 472 U.S. 424, 434 (1985). Interlocutory appeals "cause disruption, delay, and expense for the litigants." *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 380 (1987). They burden appellate courts by requiring consideration of unnecessary and duplicative issues. 15A Charles Alan Wright et al., *Federal Practice and Procedure* § 3907, at 269 n.2 (2d ed. 1992). And they "encroach[] upon the prerogatives of district court judges, who play a special role in managing ongoing litigation." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (internal quotation marks omitted). We tolerate these costs in the handful of cases in which interlocutory appeal is necessary to "achiev[e] a healthy legal system," but we must guard against them otherwise. *Digit. Equip. Corp.*, 511 U.S. at 867 (internal quotation marks omitted). Here, as in most cases, the health of our legal system does not turn on the availability of interlocutory appeal. *Cf.* Court Op. at

23

14–17 (explaining that a *Parker*-based appeal is not effectively unreviewable after final judgment).

Finally, *Commuter Transportation Systems* has created no serious reliance interests. The only litigants with reliance interests in that decision are the government and quasi-government litigants that prefer the right to appeal an adverse ruling before it is final. To be sure, to the extent that there are erroneous denials of state-action immunity, our decision might create additional litigation costs. But "the convenience of government officials" does not "count in the balance of *stare decisis*." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2447 (2019) (Gorsuch, J., concurring in the judgment); *see also Hallock*, 546 U.S. at 353 (refusing to consider "simply abbreviating litigation troublesome to [g]overnment employees" as an important interest for purposes of the collateral-order doctrine).

Nor is there a real risk that our decision will hamper the ability of states to regulate their economies. The *amici* states contend that our decision and its attendant litigation costs will have a "chilling effect" on state regulation, but I doubt it. *Parker*-based interlocutory appeals have never been common, and *Parker* remains an important defense to liability.

In any event, the ease of regulation is not a meaningful reliance consideration. *See Kisor*, 139 S. Ct. at 2447 (Gorsuch, J., concurring in the judgment). General concerns about the "efficiency of [g]overment" and the effects

24

of the "burden[s] and distract[ions]" of litigation can be asserted in any case involving the government. *Hallock*, 546 U.S. at 353. As we do not treat these concerns as "substantial public interest[s]" for purposes of the collateral-order doctrine, *id.*, we need not treat them as significant concerns when we evaluate reliance. These concerns are not "the sort of reliance interest[s] that could outweigh the countervailing interest[s]" that support overruling *Commuter Transportation Systems*. *Kisor*, 139 S. Ct. at 2447 (Gorsuch, J., concurring in the judgment) (internal quotation marks omitted). "Continuing to follow [*Commuter Transportation Systems*] would do more harm than good," so "[t]his appeal presents the rare circumstance where we should overturn our precedents." *McCarthan*, 851 F.3d at 1096, 1099.

TJOFLAT, Circuit Judge, concurring:

There's a significant facial difference between this case and *Commuter Transportation Systems v. Hillsborough County Aviation Authority*, 801 F.2d 1286 (11th Cir. 1986), that could lead some to the reasonable belief that we needn't overrule *Commuter* to conclude we lack jurisdiction.  Namely, the District Court here expressly refrained from deciding whether the Board members established their *Parker*[1] defense, choosing instead to postpone the determination until further discovery had been conducted.  Because jurisdiction under the collateral-order doctrine depends on a "fully consummated decision" in the district court, it seems obvious at first blush that we lack jurisdiction.  *Abney v. United States*, 431 U.S. 651, 659, 97 S. Ct. 2034, 2040 (1977).

By holding that *Parker* provides an immunity from suit, however, *Commuter* conferred a special status on the state-action doctrine.  Immunities, unlike mere defenses from liability, are deemed denied even if not expressly ruled upon because a defendant who is forced to proceed to the next stage of litigation is conclusively and necessarily denied the immunity he claims.  *Mitchell v. Forsyth*, 472 U.S. 511, 527, 105 S. Ct. 2806, 2816 (1985).  That's why it's necessary for us

---

[1] *Parker v. Brown*, 317 U.S. 341, 63 S. Ct. 307 (1943)

26

to overrule *Commuter* even though the District Court below didn't literally decide

the *Parker* issue.

I.

The District Court did not decide whether the Board members had

established their *Parker* defense at the motion-to-dismiss stage.  Rather, it denied

the Board members' Rule 12(b)(6) motion to dismiss only because it found that

SmileDirect's complaint stated a claim under the Sherman Act.  It expressly

reserved the *Parker* question for after discovery:

> [T]he Complaint reveals a well-pleaded factual dispute that is not
> resolved by the Certification of Active Supervision. Only discovery
> will determine whether the Board provided all relevant information to
> the Governor, whether the proposed amendment was subjected to any
> meaningful review by the Governor, or whether the Certification of
> Active Supervision was merely "rubberstamped" as a matter of course.
> …
> *Accordingly, the Court finds that a definitive ruling on Parker immunity
> would be premature at this stage*, that SmileDirect's Sherman Act
> anititrust claim, as pleaded, is sufficient to survive a Rule 12(b)(6)
> motion to dismiss on Parker immunity grounds, and that *further factual
> development is required to determine whether the Board members are
> entitled to Parker immunity. The Board members may therefore raise
> the Parker immunity defense at a later stage in this litigation, such as
> in a motion for summary judgment, if appropriate.*

On its face, this ruling seems to flunk *Cohen*'s first prong, which requires

that the ruling appealed from "conclusively determine the disputed question."[2]

---

[2] *Cohen*'s three prongs are: "[1] the order must conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and

27

*Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S. Ct. 2454, 2458 (1978). This requirement ordinarily bars immediate review of an issue the district court did not rule on, or which it ruled on but left open to reconsideration. 15A Charles A. Wright & Arthur Miller, Federal Practice and Procedure § 3911.1 (2d ed. 2021).

One might reasonably wonder, then, whether it is necessary for us to overrule *Commuter*. After all, the District Court in *Commuter* never indicated that the extensive discovery record before it was insufficiently developed or that its summary judgment denial was in any way tentative or subject to revision. *Commuter*, 801 F.2d at 1288–89. Might not this be a basis on which to distinguish *Commuter*?

Possibly. But there's good reason to believe that claims of immunity from suit are different from mere defenses to liability when it comes to *Cohen*'s first prong. An immunity from suit—like qualified immunity or absolute immunity—is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell*, 472 U.S. at 526, 105 S. Ct. at 2815. As such, it is "effectively lost if a case is erroneously permitted to go to trial." *Id.* In *Mitchell*, the Supreme Court explained why a pre-trial denial of qualified immunity would satisfy *Cohen*'s first prong even if the evidence at trial showed that the defendant was entitled to immunity after all:

---

[3] be effectively unreviewable on appeal from a final judgment." *Coopers*, 437 U.S. at 468, 98 S. Ct. at 2458 (citation omitted).

> [T]he trial judge may rule only that if the facts are as asserted by the plaintiff, the defendant is not immune. At trial, the plaintiff may not succeed in proving his version of the facts, and the defendant may thus escape liability. Even so, the court's denial of summary judgment finally and conclusively determines the defendant's claim of right not to *stand trial* on the plaintiff's allegations, and because "[t]here are simply no further steps that can be taken in the District Court to avoid the trial the defendant maintains is barred," it is apparent that "*Cohen*'s threshold requirement of a fully consummated decision is satisfied" in such a case.

*Id.* at 527, 105 S. Ct. at 2816 (quoting *Abney*, 431 U.S. at 659, 97 S. Ct. at 2040) (emphasis in original).

It seems to follow that a defendant's claim to immunity is conclusively denied whenever the defendant is made to proceed to the next stage of the litigation.[3] It matters not whether the district court intends to reconsider the ruling or even whether it makes an express ruling at all. By holding that *Parker* provides an immunity from suit rather than a mere defense to liability, *Commuter* therefore implicitly held that a defendant who raises *Parker* need not obtain an express and non-tentative ruling to immediately appeal. It is enough that the defendant is forced to proceed to discovery or trial. It is this implicit holding that stands in our way today notwithstanding the lack of an express ruling on *Parker*.

## II.

---

[3] If qualified immunity is raised at the motion-to-dismiss stage, the defendant's claim is conclusively denied once the court subjects him to discovery. *Behrens v. Pelletier*, 516 U.S. 299, 308, 116 S. Ct. 834, 839–40 (1996). If it's raised at summary judgment, it's denied when the case proceeds to trial. *Mitchell*, 472 U.S. at 527, 105 S. Ct. at 2816.

Once we clear away *Commuter*, the conclusion that we lack jurisdiction follows per force. The Supreme Court and the lower federal courts have held that immediate review of tentative rulings—at least where a mere defense from liability is at issue—is unavailable under *Cohen*.

Consider *Swint v. Chambers County Commission*, 514 U.S. 35, 115 S. Ct. 1203 (1995). In that case, a county moved for summary judgment on plaintiffs' 42 U.S.C. § 1983 claims, arguing the Supreme Court's decision in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 98 S. Ct. 2018 (1978), precluded liability. *Swint*, 514 U.S. at 38–39, 115 S. Ct. at 1206. The District Court denied the motion, citing a genuine issue of fact as to whether the sheriff who committed the raid that gave rise to plaintiffs' civil rights claims was a policymaker for the county, which if true would subject the county to liability under *Monell*. *Id.* at 39–40, 115 S. Ct. at 1206–07. In denying defendants' motions for reconsideration, however, the District Court indicated its intent to revisit the question:

> What th[is] Court decided in its [prior order] was that the Plaintiffs had come forward with sufficient evidence to persuade this Court that Sheriff Morgan may be the final policy maker for the County. The parties will have an opportunity to convince this Court that Sheriff Morgan was or was not the final policy maker for the County, and the Court will make a ruling as a matter of law on that issue before the case goes to the jury.

*Id.* (alterations in original).

30

We thought we had jurisdiction to review the order not under the collateral-order doctrine (which we recognized didn't apply), but under our pendent appellate jurisdiction.[4]  *Id.* at 40–41, 115 S. Ct. at 1207.  And we reversed the order denying the county's motion for summary judgment.  *Id.* at 41, 115 S. Ct. at 1207.  The Supreme Court then vacated our opinion and held that we lacked jurisdiction over the county's appeal whether under the collateral-order doctrine or our pendent jurisdiction.  *Id.*  The collateral-order doctrine did not supply jurisdiction because

> [t]he District Court planned to reconsider its ruling on the county commission's summary judgment motion before the case went to the jury.  That court had initially determined only that "Sheriff Morgan … may have been the final policy maker for the County."  The ruling thus fails the *Cohen* test, which "disallow[s] appeal from any decision which is tentative, informal or incomplete."

*Id.* at 42, 115 S. Ct. at 1208 (quoting *Cohen*, 337 U.S. at 546, 69 S. Ct. at 1225)

(alterations in original).[5]

---

[4] "Pendent jurisdiction is properly exercised over nonappealable decisions of the district court when the reviewing court already has jurisdiction over one issue in the case." *Stewart v. Baldwin Cty. Bd. of Educ.*, 908 F.2d 1499, 1509 (11th Cir. 1990) (citation omitted).  The individual defendants in *Swint* were denied qualified immunity, which we recognized supplied a basis for our appellate jurisdiction under *Mitchell*, 472 U.S. at 530, 105 S. Ct. at 2817–18.  *Swint v. City of Wadley, Ala.*, 5 F.3d 1435, 1448–49 (11th Cir. 1993).  We thus exercised our pendent jurisdiction over the county's appeal in the interest of "judicial economy."  *Id.* at 1449–50.

[5] Even in cases where *Cohen*'s first prong is satisfied—for instance where the court determinatively rejects a defense in a bench trial under Federal Rule of Civil Procedure 52(c)—*Cohen*'s other two prongs may still prevent immediate review.  Findings of fact underlying the court's ruling, for example, are likely to flunk the requirement that the issue reviewed be separate from the merits.  *See Johnson v Jones*, 515 U.S. 304, 314–15, 115 S. Ct. 2151, 2157 (1995).  And mere defenses from liability are unlikely to be considered "effectively unreviewable" as part of a final judgment.  In *Swint*, for instance, the Court went on to hold that *Monell* was a mere defense to liability and that "[a]n erroneous ruling on liability may be reviewed effectively on appeal from final judgment."  514 U.S. at 43, 115 S. Ct. at 1208.

31

The lower federal courts have found *Cohen*'s first factor lacking under similar circumstances. A Third Circuit case, *Harris v. Kellogg Brown & Root Services, Inc.*, 618 F.3d 398, 399 (3rd Cir. 2010), involved tort claims against a government contractor that performed allegedly negligent electrical maintenance for the United States military. The contractor, arguing that the case presented non-justiciable political questions and that it was immune from suit under the "combatant activities" exception to the Federal Tort Claims Act's waiver of sovereign immunity,[6] moved to dismiss the case. *Id.* at 399.

The District Court, in denying the motion without prejudice, concluded that the case did not present political questions and that the contractor, at least "at this time," was not entitled to immunity. *Id.* at 400. But the Court noted that "[i]f further factual development illuminates the presence of political questions in this action, [the contractor] may renew its motion at that time," and also underscored that its decision respecting immunity "was informed by the fact that only 'limited discovery' had been conducted to date." *Id.* In declining to certify the question for interlocutory appeal under 28 U.S.C. § 1292(b),[7] the Court again emphasized that

---

[6] *See* 28 U.S.C. § 2680(j) (preserving immunity from "[a]ny claim arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war").

[7] Section 1292(b) provides:

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate

"the case was in the early stages of discovery" and that it "would entertain a renewed motion, if one was warranted in light of the facts obtained through further discovery." *Id.*

The contractor appealed under § 1291 and the Third Circuit tossed the case. *Id.* at 400–01. "[T]he order appealed did not 'conclusively determine' whether [the contractor] could successfully invoke the political question doctrine or the combatant activities exception," said the Court, because the District Court twice made clear that its order was not necessarily a "final disposition" of the issues. *Id.* at 401–02. That being so, exercising jurisdiction over the appeal would undermine § 1291's goal of "avoiding piecemeal litigation":

> It takes little imagination to foresee how reviewing the District Court's ruling now could undermine that goal. Suppose we undertook review here and concluded that, on the record before us, no political question existed. We would then remand the case, and presumably, discovery would continue. But because the presence or absence of a political question is such a fact-intensive inquiry, . . . a better-developed record could give rise to another colorable motion to dismiss. Suppose that this time, the District Court granted [the contractor]'s motion, and Plaintiffs appealed. We would again be required to decide the applicability of the political question doctrine to this case. There could be no clearer example of the very redundancy, delay, and waste of judicial resources that the final decision rule is intended to prevent.

---

termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

*Id.* at 403–04 (citing *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374, 101 S. Ct. 669 (1981)).[8]

The Second Circuit has also interpreted *Cohen*'s first factor as precluding review of orders "expressly subject to future reconsideration by the issuing court." *Metro Servs. Inc. v. Wiggins*, 158 F.3d 162, 165 (2d Cir. 1998) (quoting *In re "Agent Orange" Prod. Liab. Litig.*, 745 F.2d 161, 163–64 (2d Cir. 1984)). Applying this rule, the Second Circuit has refused to review the denial of *Feres*[9] immunity on a motion to dismiss where the District Court emphasized that its ruling was "tentative to assist the parties in preparing for trial" and that the government could "renew its motion to dismiss at any time before or during trial as further evidence and legal developments suggest."[10] *In re Agent Orange*, 745 F.2d at 164 (citation and quotation marks omitted). The Second Circuit has likewise

---

[8] See *Metex Corp. v. ACS Industries, Inc.*, 748 F.2d 150, 153–54 (3d Cir. 1984), for another instance where the Third Circuit found *Cohen*'s "determinative ruling" requirement unsatisfied due to the provisional nature of a summary judgment denial.

[9] The Supreme Court held in *Feres v. United States*, 340 U.S. 135, 146, 71 S. Ct. 153, 159 (1950), that "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service."

[10] Although the government pressed the argument, the Supreme Court did not reach the question whether the *Feres* doctrine provided an immunity from suit or whether it instead provided a mere defense to liability. *In re Agent Orange*, 745 F.2d at 164. The Court thought it didn't need to reach the question because it interpreted the District Court's order as leaving "open the distinct possibility of dismissal before the case is heard" so that "the occurrence of a trial is no certainty." *Id.*; *but see Behrens*, 516 U.S. at 308, 116 S. Ct. at 839 ("*Harlow* and *Mitchell* make clear that [qualified immunity] is meant to give government officials a right, not merely to avoid standing trial, but also to avoid the burdens of such *pretrial* matters as discovery." (citation and quotation marks omitted) (emphasis in original).

refused to review a District Court's designation of lead plaintiffs in a class action where it "explicitly indicated that its designation of [the plaintiffs] will be subject to continuing reassessment throughout the course of the litigation." *Metro*, 158 F.3d at 165.

The Fourth Circuit, too, has joined these other circuits in this principle. *Jamison v. Wiley*, 14 F.3d 222, 227–28 (4th Cir. 1994), involved a provision of the Westfall Act requiring district courts to substitute federal employee defendants in tort suits for the United States when the Attorney General certifies that the employee was acting within the scope of his employment at the time of the tort. The District Court initially swapped Wiley for the United States after the government filed a Westfall certification, but under authority of a Fourth Circuit decision interpreting the Act, decided to conduct an independent determination of the scope issue. *Jamison*, 14 F.3d at 228–29. In the meantime, the District Court vacated its initial substitution order and reinstated Wiley as the named defendant. *Id.* at 229. The Court noted, though, that "it was not making a final ruling on the substitution question at that time . . . [since] it could not determine [the issue] . . . without further 'factual inquiry.'" *Id.* After eight months and an evidentiary hearing, the District Court issued an order finding that "the acts at issue were not within the scope of Wiley's employment" and that substitution was therefore inappropriate. *Id.* (quotation marks omitted).

35

Wiley appealed this ruling, and Jamison argued that the Fourth Circuit

lacked jurisdiction because the District Court's pre-hearing ruling was immediately

appealable under *Cohen*, and Wiley's failure to appeal *that* order therefore made

this appeal untimely. *Id.* at 229–30. The Fourth Circuit disagreed:

> The [pre-hearing] order does not meet the first—and most fundamental—requirement for appealability under *Cohen*, because it did not "conclusively determine" the issue in dispute: whether Wiley was entitled to have the United States substituted for him as defendant. … Though the district court [] directed that Wiley be resubstituted as the named defendant, it made clear that its decision to do so was a tentative one, made only to return things to the status quo at the time of removal, and that it might well change its mind and resubstitute the United States after the evidentiary hearing. Such a tentative and preliminary ruling on a disputed issue, which plainly holds open the prospect of reconsideration and alteration by the district court itself, is not sufficiently "final" to be appealable under the collateral order doctrine.[11]

*Id.* at 230 (citation omitted).

These cases represent the rule that, at least where a defense from liability is

at issue, a district court's ruling will not satisfy *Cohen*'s first prong when the court

states that the ruling is tentative and will be reconsidered later. Applying this

principle here, this appeal is due to be dismissed because the District Court's

ruling, like those in each of the foregoing cases, was manifestly "tentative,

---

[11] The Fourth Circuit did find that the District Court's post-hearing ruling was immediately appealable under *Cohen* because "it finally and conclusively denied a claim of absolute immunity." *Jamison*, 14 F.3d at 234.

36

informal or incomplete." *Swint*, 514 U.S. at 42, 115 S. Ct. at 1208 (quotation

marks and citation omitted).

For this reason as well as the reasons set forth in the majority opinion, I

concur in the decision to overrule *Commuter* and to dismiss this case for lack of

jurisdiction.